**JAY et al. v. BYRNE, KINGSTON & CO.**

Circuit Court of Appeals, Seventh Circuit.
June 7, 1929.

No. 4126.

George L. Wilkinson, of Chicago, Ill., for appellants.

Carlton Hill, of Chicago, Ill., for appellees.

Before ALSCHULER and PAGE, Circuit Judges, and LUSE, District Judge.

ALSCHULER, Circuit Judge. The appeal is from a decree dismissing for want of equity a bill charging infringement of United States patent No. 1,153,089, September 7, 1915 (application February 15, 1915), to W. Jay, one of appellants; the other appellant being Stewart-Warner Speedometer Corporation, Jay's exclusive licensee for the full term of the patent.

The patent purports to be for a new and useful improvement in fuel feeding devices for internal combusion engines. The purpose of such devices (called vacuum tanks) is to raise by suction the gasoline from the lower lying gasoline supply tank of an automobile, to a higher level tank, from which the gasoline will flow by gravity to the carburetor. The source of the suction is usually in the manifold of the moving engine. At the time of the asserted invention vacuum tanks were old in the art, Jay himself having various prior patents thereon, and Stewart-Warner, with whom he was connected during all the times here in question, being then and there-

tofore, and ever since, a very large manufacturer and distributor of such devices.

The particular respect wherein the device of this patent is claimed to be different from, and an advance over, prior inventions of Jay and others, is in the omission of a valve to a restricted port between the suction line and the upper chamber of the tank, rendering the suction from this chamber continuous notwithstanding the operation of the valve to the atmosphere port which is intermittently opened to enable the gasoline to flow by gravity into the lower chamber of the tank.

In the prior Jay device the suction port was larger, and was equipped with a valve which interrupted the suction while gasoline was discharging from the upper tank.

It is extremely questionable whether, under facts here appearing, this patent shows any improvement or advance in this respect over the prior art. Stewart-Warner, whose output of such devices runs into the millions, never produced for marketing any which were made under the teachings of this patent. Theirs were all equipped with the larger and valved suction port. While it is true that a patentee may for the entire period of the patent lawfully exclude others from making or using the patented article, even though he himself makes or authorizes no use of it, its nonuse for nearly the entire period of the patent, by an owner or licensee extensively engaged in making devices of the same general character, may well suggest its lack of merit over the article long produced and marketed.

This of itself might not be sufficient to stamp the article as wanting in patentable advance; but the record affords evidence, apart from the mere fact of nonuse, giving potency to the conclusion that the nonuse was from lack of merit rather than merely a matter of choice or whim on the part of appellants.

The inventor, Jay, all along associated with Stewart-Warner, and long a specialist in this particular field, testifying in open court as to why the tank of this patent was not made, said: "By way of explanation I can say we would have had to build two types of tank. That tank is not practical for certain classes of cars. With a long wheel base car going down hill the back gets higher than the front, which will necessarily fill the vacuum tank full of gas and if this suction occurs it sucks into the cylinder. That is the thing that will happen on any long wheel base car with that tank. The other tank will do the same for both of them, and for that reason we never went into the manufacture of that. * * * The average customer does not recognize it, but he discovers it sooner or later. We could use it in short wheel base cars, but in long wheel base that double valve is the proper construction, so we just continued with the double valve."

The fair inference from this testimony of the patentee is that the device of the patent was not practicable for long wheel-base cars, and that the older style was at least equally good for cars of short wheel-base. The conclusion of lack of patentable advance, which the long nonuse, coupled with the patentee's testimony, thus persuasively suggests, is not minimized by the fact that appellee does employ the unvalved suction port in its vacuum tank. Whether or not the valved port was open to appellee, in combination with the other elements it has adopted, is not necessary for us to investigate or decide.

The District Court grounded its dismissal of the bill on the conclusion that one Coulombe conceived and made such vacuum tanks with restricted port, unvalved against continuous suction, prior to Jay's invention date as fixed by him and found by the court.

A vacuum tank with restricted port unvalved against continuous suction is shown, though not claimed, in United States patent No. 1,246,887 to Coulombe, issued November 20, 1917 (application June 8, 1915); and it is substantially this device which the court found to have been conceived in 1913, and used in that year and early in 1914—prior to Jay's invention date.

It is the contention of appellant that the evidence to sustain this alleged priority of Coulombe's invention date is lacking in that degree of certainty which the law requires.

Appellant, conceding the propriety of according weight to the conclusions of fact reached by a trier of them, asserts that the evidence appears in the main by depositions, to pass upon which this court is in the same position as the District Court. True, much of the evidence was by deposition; but it is also true that about 200 pages of oral testimony were taken in open court, including highly important testimony by Jay and Coulombe, who had also testified by deposition. These men, and witness Trumble, who also testified in open court, were working contemporaneously in the same field—Jay with the Stewart-Warner company, and the others for themselves or with different interests—and they met on occasions and considered the merits and demerits of such contrivances.

Of course, the testimony of Jay and Coulombe is here of much significance on the question as to which of them first made and

used the restricted port with continuous suction, and this question of fact was, in the nature of things, determinable in large measure from their own testimony, and the weight to be accorded it. The District Court expressed the belief and found that both Jay and Coulombe were credible witnesses, and pointed out facts and circumstances appearing not only from their testimony but from that of other witnesses as well, given both by deposition and in open court, which tended to corroborate Coulombe's claim of earlier invention, and found Jay's invention date to have been June 15, 1914, and Coulombe's 1913, and his use of it in 1913, and in 1914 prior to June 15.

The District Court, mindful of the rule as stated in its memorandum that, "It is well settled that the trier of facts must be convinced beyond a reasonable doubt that the one who files his application later than his adversary actually made his invention first," concluded that the evidence of Coulombe, with the corroboration appearing, supplied the requisite degree of proof to justify the finding of earlier invention in Coulombe. It would be impossible to lay down general rules prescribing when the proof to sustain an asserted fact should or should not convince beyond reasonable doubt that it has been established, but our reading of all the testimony on the subject of Coulombe's invention date convinces us that the trier of the facts was not unwarranted in the conclusion that priority of invention and use by Coulombe appeared therefrom beyond reasonable doubt.

In this situation we would not be justified in disturbing the conclusion of the District Court.

The decree is affirmed.